PAROTTE v. HOLBROOK, CABOT & ROLLINS.

(Circuit Court, D. Connecticut. February 17, 1904.)

No. 529.

**1. INJURY TO EMPLOYE—NEGLIGENCE—EVIDENCE.**

Evidence on a hearing in damages after default, in an action against the employers for injury to an employé while engaged in dumping a bucket as it was raised by a derrick filled with mud and stones from an excavation, *held* to disprove any negligence in furnishing an insufficient bucket, or in putting into it without warning the stone which occasioned the injury.

James H. O'Rourke, for plaintiff.

Seymour C. Loomis, for defendants.

PLATT, District Judge. This is a hearing in damages after a default, in accordance with the state practice, in an action by John Parotte to recover $5,000 for injuries sustained by him through the negligence of the defendants, brought to the superior court for Fairfield county, in this state, on the first Tuesday of January, 1903, and duly transferred to this court by the defendants for diversity of citizenship.

Upon the evidence presented I find the following facts:

On December 14, 1901, the date of the accident hereinafter described, the defendants as contractors were engaged upon the substructure of the railroad improvements at Bridgeport, in this state. At a point between the Berkshire tracks and Housatonic avenue, near the foot of Golden Hill street, an excavation was being made for a pier. It was about 14 feet wide, 16 feet long, and 5 feet deep. It was in the foundations of an old building which had been erected on soft ground, and the material to be removed consisted of timbers, mud, stones, and the like. In the afternoon of the day in question the excavation had been carried down below the harder surface and into the mud. The manner of excavation was this: A gang of laborers, numbering about eight, worked at and in the excavation. The material was carried away by a steam derrick, to which a dumping bucket was attached which was filled by the laborers, then hauled up and dumped on one side. The plaintiff was employed to dump the bucket. This was done by lifting the lever of a clutch on the side of the bucket, which was placed sufficiently back of the center of gravity so that when it was unfastened the bucket at once dumped its contents toward the front. This could be readily done from the side of the bucket, thus avoiding the danger of being hit directly by the contents of the bucket as it emptied itself. The plaintiff was an experienced man at this kind of work, having been employed by the defendants for three months in the work of dumping, and having been so employed for about three years in West Virginia shortly before working for defendants. He was characterized by a companion laborer as "practical at everything." The capacity of the bucket was a cubic yard. It was customary to send up from such excavations, in the bucket, any material which could be conveniently placed therein. When stones were found which were too large to be lifted by the men and placed in the bucket, chains were

within reach which could be hitched around the stone so that it could be lifted without the bucket. Such stones were carried by the derrick to a separate place on the dump, and piled together, for further use on the structure. Large timbers were also taken out in that way. The engine, derrick, ropes, bucket, and chains were, each and all, proper and safe appliances to perform the work upon which the plaintiff was engaged.

James Sweetman was the boss in charge of this gang of laborers and those working on the next excavation just at hand. He was under a general walking boss, who looked after the different gangs along the work, and both were subject to the superintendent in charge of the work, Mr. Bell. All the men were competent and well qualified for the positions in which they were placed.

The injury occurred in this wise: When the men were about to fill the bucket, between 4 and 5 o'clock in the afternoon, a question arose as to whether a roundish stone weighing about 300 pounds should be put into the bucket or sent up with chains. It was the opinion of the laborers that it was a "little too large" to be sent up in the bucket, but the man in immediate charge of the gang directed that it be lifted into the bucket. The stone was about one-third as large as the bucket. Two men could lift it into the bucket, and, owing to its shape and the mud and water around it, more men would have been of no practical assistance. After placing it in the bucket, half frozen dirt and mud was shoveled in until the bucket was full, and the signal was then given to hoist the bucket. When the bucket reached the plaintiff he tried to loosen the clutch, but did not succeed. He signaled for the bucket to be lowered, and when it was close to the earth that had been theretofore dumped from the excavation he examined its contents without disturbing them; tried the lever again, and again failed to loosen the clutch; then signaled for the bucket to be lifted, and when it was about as high as his breast loosened the clutch, assisted the bucket to tip with his hand, and as it began to tip stepped back two or three steps; but his left leg became stuck in the soft mud, and the stone came from the bucket upon his right leg and broke it just above the ankle. The earth which had been taken from the excavation was piled up to a height of five or six feet, covering a space 20x30 feet on the surface, and was fairly level and quite soft and muddy. He was taken to the hospital, the leg was cared for, and after 52 days he came out, using crutches until April, when he again went to work for the defendants, but after four days was compelled to rest on account of his pain until May, when he went regularly to work. His wages were $1.50 per day. He has expended $2 for liniment. His hospital bills have been paid by the defendants.

From my view of this case, it is unnecessary to give further details of his injuries, or to fix the amount of damages to which he might be entitled in different circumstances.

Under the practice in this state, it becomes the duty of the defendants, after suffering a default, to disprove their own negligence, as well as to bear the burden in showing contributory negligence on the part of the plaintiff, or that he assumed the obvious risk of the employment. So far as the defendants' negligence is concerned, the

plaintiff is, of course, limited in his proof to the charges stated in the complaint, and the fact that judgment was entered upon default is not a substantive fact, and is entitled to no weight. These charges are contained in paragraphs 3 and 4 of the complaint, and are:

First. That defendants, through their vice principal, without warning or notice, caused a large rock or boulder to be placed in the bucket, and to be covered with earth so as not to be discernible to the plaintiff, and to be hoisted out of the excavation in the same manner as would be employed in hoisting the earth alone.

Second. The bucket was not a reasonable, safe appliance for hoisting said rock or boulder, and that the placing it there without warning rendered the place in which the plaintiff was employed an extremely dangerous and unsafe place to work.

If there shall be eliminated from these allegations the proposition that Sweetman, who had charge of the details of excavation so far as the small gangs in the two openings from which material was delivered to plaintiff for dumping were concerned, was a vice principal, there is nothing left except the allegation that "the bucket was not a reasonable, safe appliance for hoisting said rock or boulder."

It is admitted by the plaintiff and his witnesses that rocks almost as large as the one in question were frequently sent up from the excavations in the buckets, and that in such cases no warning was given from below. The only question was whether this particular rock should have gone up in the bucket or in the chains. Chains were at hand and proper ones. It was clearly a detail of the work to decide whether this stone should go up in one way or in the other way.

I am, however, satisfied beyond the slightest doubt that it was such a stone as could properly be sent up in the bucket. This being so, it is unimportant whether Sweetman was a vice principal or a mere fellow workman; but, if the case demanded it, I should hold without question that the error, if there were one, in choosing the bucket, rather than the chain, was not the fault of the master.

It is also unnecessary to decide whether the plaintiff's own negligence contributed essentially to the injury. In that respect I shall leave the facts to speak for themselves.

Upon the ground, then, that the defendants, by the evidence, have disproved their own negligence, it is my duty to make the damages nominal, say $10.

Let judgment be entered for the plaintiff in accordance with this opinion.